**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

MICHAEL BEAM and DOROTHY BEAM,
in their own right and as Co-
Administrators of the Estate of C.B.,

    Plaintiffs,

        v.

WESTERN WAYNE SCHOOL DISTRICT;
ANTHONY ZOPPI; ANN SLEDZINSKI;
KASEY PHILLIPS; JAMES REBAR; and
MICHAEL COLE,

    Defendants.

CIVIL ACTION NO. 3:15-CV-01126

(JUDGE CAPUTO)

## <u>MEMORANDUM</u>

Presently before the Court is a Motion to Dismiss Plaintiffs' Complaint filed by Defendants Western Wayne School District, Anthony Zoppi, Ann Sledzinski, Kasey Phillips, James Rebar, and Michael Cole (collectively the "Defendants"). (Doc. 11.) The facts of this case present a tragic story of Plaintiffs' minor son, C.B., who struggled in school due to various disabilities, and ultimately took his own life. Plaintiffs allege that C.B.'s suicide was a result of Defendants' failure to implement and follow an appropriate educational plan for him, seeking compensatory damages and attorney fees under (1) Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794 ("Section 504"); (2) the Americans with Disabilities Act, 42 U.S.C. § 12131 *et seq.* ("ADA"); (3) the Civil Rights Act, 42 U.S.C. §§ 1983, 1988; and (4) Pennsylvania law. Defendants argue that Plaintiffs have failed to allege facts that plausibly state any of their claims and seek dismissal of the entire Complaint. They also argue that they are entitled to immunity with regard to Plaintiffs' state-law claims pursuant to the Pennsylvania Political Subdivision Tort Claims Act, 42 Pa.C.S. § 8541 *et seq.* ("PSTCA"). Because Plaintiffs have adequately alleged their Section 504 and ADA claims, Defendants' motion to dismiss these claims will be denied. However, because

Plaintiffs have failed to allege two (2) necessary elements of their state-created danger claim pursuant to section 1983–a foreseeable and fairly direct harm and the Defendants' affirmative use of their authority in a way that rendered C.B. more vulnerable to danger than had they not acted at all, Defendants' motion to dismiss this claim will be granted.  Finally, because the Defendant School District is entitled to immunity under the PSTCA, Plaintiffs' survival and wrongful death claims against it will be dismissed with prejudice.  However, Plaintiffs' survival and wrongful death claims against the remaining defendants–Anthony Zoppi, Ann Sledzinski, Kasey Phillips, James Rebar, and Michael Cole (collectively the "Individual Defendants")–will be dismissed without prejudice.  Plaintiffs shall have twenty-one (21) days from the date of entry of this Memorandum to amend their claims against the Individual Defendants should they seek to plead the "willful conduct" exception to the PSTCA.

## I. Background

The facts as set forth in Plaintiff's Complaint are as follows:

Michael Beam and Dorothy Beam ("Plaintiffs") are the Co-Administrators of the Estate of C.B. and the parents of C.B., a sixteen-year-old student of the Western Wayne School District.  On November 5, 2009, C.B. received a formal diagnosis of Attention Deficit Hyperactivity Disorder ("ADHD") and Moderate to Severe Psychosocial Stressors, which led to academic problems linked to failures to complete or timely submit class assignments.  C.B. also exhibited signs of depression and anxiety.

Defendant Western Wayne School District (the "School District") is the recipient of federal funding and a Local Education Agency ("LEA") within the meaning of federal education regulations.  As such, the School District is responsible for developing and implementing a special education plan for services to be provided to children with disabilities.  The School District's plan to provide these services must be approved by the

Commonwealth of Pennsylvania and must provide for a Free Appropriate Public Education ("FAPE") to children who require specialized educational programs, accommodations, services, and placements.  The School District is a "public entity" within the meaning of 42 U.S.C. § 12132.

Defendants Anthony Zoppi, Ann Sledzinski, and James Rebar are all teachers at Western Wayne High School (the "High School") and all acted as one of C.B.'s teachers prior to his death.  Defendant Kasey Phillips acted as C.B.'s guidance counselor at the High School.  Defendant Michael Cole is the District Director of Student Services for the School District and was involved in the supervision and implementation of C.B.'s educational plan.

In September 2010, Plaintiffs and the School District agreed to a Section 504 Service Plan, which provided, *inter alia*, that C.B.'s mother and his teachers will have communication via e-mail when there are any concerns with C.B.'s progress.  This provision continued in C.B.'s subsequent Section 504 Service Agreements.

All Defendants were made aware of C.B.'s suicidal ideations prior to his death.  In particular, Defendants were made aware that C.B.'s feelings toward suicide were much stronger than the average child his age, that he met with a therapist twice a month, and that his suicidal thoughts were linked to his academic failures.  In May 2012, C.B.'s mother e-mailed Megan Rush at the School District stating that C.B. was failing several classes, yet Ms. Rush was the only teacher who was in contact with her.  At the end of the 2011-2012 academic year, C.B. began to receive unusually low grades, including one D in Algebra and one C in American Culture.  In November 2012, C.B. received a failure notice in Biology.

On November 13, 2012, C.B.'s Section 504 Service Agreement was renewed, but without any modifications to address his recent academic failures.  In January 2013, the School District sent C.B.'s family a notice that C.B. had failed four (4) classes in the second marking period:  Biology, Geometry, American Cultures II, and American Literature.  C.B.'s

3

Section 504 Plans continued to fail to provide any affirmative instruction, therapeutic intervention, or related services as required by Section 504 and the ADA, notwithstanding his dramatically declining educational performance in the 2012-2013 academic year. Despite the provision in C.B.'s Service Plans that C.B.'s teachers e-mail C.B.'s mother with any concerns regarding C.B.'s progress, C.B.'s teachers failed to comply with this requirement for the 2012-2013 academic year and beyond.  Plaintiffs first became aware that C.B. was failing five (5) classes in April 2013.

C.B.'s mother called the School District in April 2013 to express her concerns that C.B.'s Section 504 plan was not being properly implemented, and a meeting was scheduled for April 30, 2013.  On April 23, 2013, Defendant Guidance Counselor Kasey Phillips e-mailed Kimberly Field of the School District asking her to set up a meeting at 3:00 P.M. "[i]n order to have all teachers present.  As soon as possible."  An April 30, 2013 e-mail characterizes this meeting as a "504 mtg."

On April 24, 2013, a School District e-mail transcribed a voicemail message that District Director of Special Education Tanya Carrelle left for her superior, Defendant Director of Student Services Michael G. Cole, asking him to call her because she had something important regarding C.B. to discuss with him:

> Hi Mr. Cole It's Tamya curly [sic] I'm could you just give me a call when you get a chance I need to talk to you got something pretty important . . . regarding call and being [sic - C.B.] I had a conversation with his mother and I think you need to know about it today if at all possible thank you bye bye.

(Doc. 1, ¶ 30.) Defendant Cole e-mailed Ms. Carrelle back that day asking her to give him a call.  Plaintiffs have no further documentation regarding any follow-up between Ms. Carrelle and Mr. Cole.

An April 24, 2013 e-mail from Defendant Kasey Phillips to various school personnel also states that C.B.'s mother had expressed her concerns for C.B.'s academic performance:

> yesterday received a phone call from C.B.'s mother.  She was upset and concerned about C.B.'s grades.  She says she watches C.B. do work each night at home and was surprised when she got his recent report card.  She was also concerned because she did not hear from C.B.'s teachers as written in his 504 plan.  We will be having a meeting on Tuesday at 3:00 pm to discuss her concerns and hopefully come to a resolution.  Any suggestions or ideas would be greatly appreciated.

(Doc. 1, ¶ 33.)  This message was forwarded to Defendant Cole.

Defendant Anthony Zoppi, C.B.'s biology teacher, responded to Defendant Phillips' e-mail, stating:

> Really interesting.  This is the highest quarter he's had for me all year.  He rode [sic] a fine line all quarter and dropped down toward the end.  He was passing for a lot of the quarter so the email didn't go because he was passing.  He failed with a 64.  How were his grades in his other classes?

(Doc. 1, ¶ 34.)  Defendant Phillips responded, "He failed 5 for the 3rd quarter, certainly his worse quarter yet."  This information was not shared with Plaintiffs.

At the April 30, 2015 meeting, Mary Ann Hall, C.B.'s therapist, told Defendants Zoppi, Sledzinski, Phillips, Rebar, and Cole via conference call that C.B. was deeply affected by poor grades and had recently expressed suicidal ideations in response to those poor grades.  Ms. Hall reported to the School District that C.B. expressed having suicidal ideations due to the fact that he found out that he was failing five classes.  At the meeting, the School District agreed and promised that C.B.'s teachers would send bi-monthly progress reports via mail and that C.B. would have bi-weekly meetings with his guidance counselor for organizational and locker clean-up check ins.  A revised Section 504 Service Agreement was sent to Plaintiffs outlining these new accommodations, and again reaffirmed the long-standing provision for communications via email when there are any concerns with C.B.'s progress.

After the April 30, 2015 meeting, four (4) weeks passed without any substantive information about C.B. being sent from the School District to Plaintiffs.  Minimal e-mails from May 31 to June 9, 2013 among school personnel indicate reservations about C.B.'s proposed senior project. However, no follow-up action was directed and these e-mails were not provided to Plaintiffs.  On June 9, 2013, Defendant Zoppi, C.B.'s biology teacher, e-

mailed Defendant Phillips, but not C.B.'s parents, that following the 504 meeting, he had agreed to allow C.B. to do back-work to raise his previous quarter's grades, stating that C.B. did some work, but not nearly as much as he had the chance to do.  C.B.'s grade increases were 66, 62, and 67 for the first three (3) quarters, and he had a projected 68 for the fourth quarter.  Defendant Zoppi noted that C.B. could pass if he did well on the final.  Neither Defendant Zoppi nor Defendant Phillips e-mailed this information to C.B.'s parents.

That marking period, C.B. was receiving failing grades in both Geometry and Literature.  Neither his Geometry teacher, Defendant Sledzinski, nor his Literature teacher, Defendant Rebar, submitted the required bi-monthly progress reports or e-mailed C.B.'s parents about C.B.'s failing grades.  ***After*** the April 30, 2013 meeting, Defendant Rebar sent e-mail communications to C.B.'s mother regarding C.B.'s grades, but continued to fail to submit the required bi-monthly progress reports.  No e-mails were generated from the School District regarding C.B. and his academic failures during the 2012-2013 academic year from August 20120 to April 19, 2013, except for one (1) perfunctory September 28, 2012 e-mail from C.B.'s guidance counselor, Defendant Phillips, asking C.B.'s teachers to "come to guidance and sign off on C.B.'s 504."  Plaintiffs assert that this failure was notable because C.B. was failing at least three (3) or more classes during most of the school year, and the School District did not e-mail Plaintiffs with information as required under his Section 504 Plan.

C.B.'s final report card was produced on June 17, 2013, and confirms that he had failed three (3) classes:  (1) Defendant Rebar's American Literature class; (2) Defendant Zoppi's Inquiry Biology with Lab class; and Defendant Sledzinski's Geometry class.  On June 17, 2013, immediately after receiving notice of his multiple failing grades on the last day of school, C.B. committed suicide by a self-inflicted gunshot wound.  C.B. left a handwritten suicide note that was found after his death.  The note says, in part: "I cannot live asa[sic] failure I'm sorry Mom and dad."

6

## II. Jurisdiction

This Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1331 because this case raises federal questions under Section 504, the ADA, and 42 U.S.C. § 1983, 1988, as well as supplemental jurisdiction under 28 U.S.C. § 1367(a).  Plaintiffs' claims and remedies are authorized by 29 U.S.C. § 794(a); 42 U.S.C. § 12131 *et seq.*, and 42 U.S.C. § 1983, 1988.  Venue is appropriate in the Middle District of Pennsylvania pursuant to 28 U.S.C. § 1391(a)(1) because all plaintiffs and defendants reside within this state and within this judicial district.

## III. Legal Standard

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, for failure to state a claim upon which relief can be granted.  *See* Fed. R. Civ. P. 12(b)(6).  When considering a Rule 12(b)(6) motion, the Court's role is limited to determining if a plaintiff is entitled to offer evidence in support of his claims.  *See Semerenko v. Cendant Corp.*, 223 F.3d 165, 173 (3d Cir. 2000).  The Court does not consider whether a plaintiff will ultimately prevail.  *Id.*  A defendant bears the burden of establishing that a plaintiff's complaint fails to state a claim.  *See Gould Elecs. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000).

A pleading that states a claim for relief must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The statement required by Rule 8(a)(2) must "'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (per curiam) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Detailed factual allegations are not required.  *Twombly*, 550 U.S. at 555.  However, mere conclusory statements will not do; "a complaint must do more than allege the plaintiff's entitlement to relief."  *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009).  Instead, a complaint must "show" this entitlement by alleging sufficient facts.  *Id*.  While legal conclusions can

provide the framework of a complaint, they must be supported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009).  As such, "[t]he touchstone of the pleading standard is plausability."  *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012).

The inquiry at the motion to dismiss stage is "normally broken into three parts:  (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged."  *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011).

Dismissal is appropriate only if, accepting as true all the facts alleged in the complaint, a plaintiff has not pleaded "enough facts to state a claim to relief that is plausible on its face," *Twombly*, 550 U.S. at 570, meaning enough factual allegations "'to raise a reasonable expectation that discovery will reveal evidence of'" each necessary element. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (quoting *Twombly*, 550 U.S. at 556).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678. "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  *Id.* at 679**.**

In deciding a motion to dismiss, the Court should consider the complaint, exhibits attached to the complaint, and matters of public record.  *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).  The Court may also consider "undisputedly authentic" documents when the plaintiff's claims are based on the documents and the defendant has attached copies of the documents to the motion to dismiss.  *Pension Benefit Guar. Corp.*, 998 F.2d at 1196.  The Court need not assume that the plaintiff can prove facts that were not alleged in the complaint, *see City of Pittsburgh v. W. Penn Power Co.*, 147 F.3d 256,

8

263 & n.13 (3d Cir. 1998), or credit a complaint's "'bald assertions'" or "'legal conclusions,'"

*Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997) (quoting *In re Burlington*

*Coat Factory Sec. Litig.*, 114 F.3d 1410, 1429–30 (3d Cir. 1997)).

## IV. Discussion

On June 9, 2015, Plaintiffs filed a six-count Complaint against Defendants.

(Doc. 1.)  Counts I and II assert violations of Section 504 and the ADA against the

School District for its failure to implement and follow an appropriate Section 504 Plan for

C.B.  Count III asserts a state-created danger claim pursuant to Section 1983 against all

Defendants.  Count IV asserts a loss of consortium claim against the School District.

Counts V and VI assert survival and wrongful death claims against all Defendants.  Each

of these claims will be discussed in turn below.

## A.      Section 504

Plaintiffs seek relief pursuant to Section 504 of the Rehabilitation Act, arguing that

that the School District failed to implement and follow an appropriate Section 504 Plan

for C.B.  Section 504 of the Rehabilitation Act bars all federally funded entities from

discriminating on the basis of disability, providing in relevant part, as follows:

> No otherwise qualified individual with a disability in the United States . . .
> shall, solely by reason of her or his disability, be excluded from the
> participation in, be denied the benefits of, or be subjected to discrimination
> under any program or activity receiving Federal financial assistance.

29 U.S.C. § 794(a) (2002).  To establish a claim pursuant to Section 504, a plaintiff must

demonstrate that (1) he is "disabled" as defined by the Act; (2) he is "otherwise qualified"

to participate in school activities; (3) the school or board of education receives federal

financial assistance; and (4) he was excluded from participation in, denied the benefits

of, or subject to discrimination at the school.  *Ridgewood Bd. of Educ. v. N.E. ex rel.*

*M.E.*, 172 F.3d 238, 253 (3d Cir. 1999) (citation omitted), *superseded by statute on other*

*grounds*.  Where, like here, a plaintiff seeks compensatory damages on a Section 504

claim, the plaintiff must also prove that the discrimination or denial of benefits at issue

was intentional, or at least that Defendants exhibited deliberate indifference to the underlying discrimination. *Shadie v. Hazleton Area Sch. Dist.*, 580 F. App'x 67, 70 (3d Cir. 2014). For the purpose of this motion to dismiss, Defendants do not dispute that C.B. is disabled, that C.B. is otherwise qualified to participate in school activities, or that the School District receives federal funding. Rather, Defendants seek dismissal on the ground that Plaintiffs have failed to adequately allege that (1) C.B. was denied the benefits of or subject to discrimination at the school and (2) Defendants exhibited deliberate indifference to the underlying discrimination.

### 1.     Denial of Benefits

Defendants argue that Plaintiffs failed to allege that C.B. was denied any educational benefits or discriminated against solely based on his disability. Specifically, Defendants maintain that none of Plaintiffs' allegations show that C.B. was denied access to a school program *because* of his disability. I disagree.

Alleging that the School District officials consistently violated C.B.'s Section 504 Plan, thereby avoiding their duties under the plan, is sufficient to state a claim that C.B. was denied access to an appropriate educational program ***because*** of his disability. For example, in *L.T. ex rel B.T. v. Mansfield Twp. Sch. Dist.*, the court rendered a judgment in favor of Plaintiffs on their Rehabilitation Act claim, noting that the school district had an obligation to provide the disabled student in question with an education and that its failure to fulfill this obligation violated the Rehabilitation Act. No. 4-1381, 2009 WL 737108, at *7-*8 (D.N.J. Mar. 17, 2009). Specifically, the court explained that a school district's "[a]voidance of their duty to provide [a disabled student] with an appropriate education is not 'sound professional judgment,' and is a violation of the Rehabilitation Act." *Id.* at *8. There, the school district knew for months that the educational program in place for a disabled student had been untenable, yet waited until after the start of the school year to even contemplate the development of a new educational plan, and only after the parent advocate insisted on a meeting to discuss the plan. The court found that given these facts, "Defendant acted with deliberate indifference to B.T.'s right to

education." *Id.* at *7.

Here, Plaintiffs allege facts sufficient to state a plausible claim that C.B. was denied an appropriate education because of his disability.  Plaintiffs allege that notwithstanding the School District's awareness of C.B.'s disabilities and ongoing academic failures, the School District failed to implement and follow an appropriate educational program sufficient to accommodate C.B.'s disabilities.  For example, Plaintiffs allege that notwithstanding C.B.'s continued academic failures, the School District failed to modify the existing Section 504 Plan to address C.B.'s particular needs. Plaintiffs also allege that the School District officials consistently failed to comply with a provision in C.B.'s Section 504 Plan that required regular e-mail communications with Plaintiffs when teachers had concerns over C.B.'s progress.  It was solely because of C.B.'s disability that he was subject to a Section 504 educational plan, and it was precisely the inadequate Section 504 plan that failed to accommodate C.B.'s needs, that allegedly caused C.B. to commit suicide.  These facts, as alleged, are sufficient to state a denial of benefits based on disability for a Section 504 violation.  *See, e.g.*, *Vicky M. v. Ne. Educ. Intermediate Unit*, No. 3:06-cv-1898, 2009 WL 4044711, at *5 (M.D. Pa. Nov. 20, 2009) (explaining that plaintiff was "subjected to a substandard environment for the sole reason that he was disabled" and the fact that he was "not singled out for such discrimination is immaterial"); *Gaudino v. Stroudsburg Area Sch. Dist.*, No. 3-cv-12-2159, 2013 WL 3863955, at *9-*10 (M.D. Pa. July 23, 2013) (denying school district's motion to dismiss ADA and Section 504 claims based on a failure to comply with the plaintiff's Individual Education Plan, which called for a classroom aide and individualized instruction).  If believed, Plaintiffs' assertions that the School District's failure to comply with certain provisions of C.B.'s Section 504 Plan could be found to have effectively excluded C.B. from participating in or receiving an equal educational opportunity. Defendants knew that C.B. was disabled, knew that they were required to follow the Section 504 Plan, and knew that if they did not follow the Plan, particularly the requirement to notify his parents of any academic failures, which Defendants knew were

linked to C.B.'s suicidal ideations, that it was likely that C.B. would commit suicide. Accordingly, Plaintiffs have adequately alleged that C.B. was denied the benefits of an appropriate education because of his disability.

Although Defendants argue that Plaintiffs' allegations are insufficient to establish that C.B. was deprived the benefits of an educational program **because** of his disability, other courts have rejected this argument in cases where the causal connection between the denial of benefits and the student's disability was far more tenuous than it is here. For example, in *M.C. ex rel. R.C. v. Perkiomen Valley Sch. Dist.*, No. 14-5707, 2015 WL 2231915 (E.D. Pa. May 11, 2015), M.C., a female student in the first grade with a speech and language impediment, was sexually abused on a school bus in her first month of elementary school. *Id.* at *1. The school district removed the perpetrator from the bus, but let him stay in the same elementary school and failed to separate him from M.C. *Id.* M.C. and her parents sought monetary relief pursuant to Section 504 and the ADA for several actions and inactions by the school district, including the district's failure to separate the perpetrator from M.C. at the school after the bus incident. *Id.* at *8. Defendants argued that Plaintiffs could not state a claim "demonstrating a causal nexus between M.C.'s Speech/Language Impairment and their alleged actions." *Id.* The court rejected Defendants' argument and in denying their motion to dismiss, noted that "[a]t this stage, Plaintiffs allege facts that the District's conduct deprived her of the benefits of an educational program that sufficiently state a plausible claim under Section 504 and the ADA arising from the bus conduct." *Id.* There, the causal nexus between M.C.'s speech and language impairment and the school district's failure to separate her from a perpetrator on the school bus who had sexually harassed her, was far more tenuous than it is here, where the School District failed to follow and implement an appropriate educational plan accommodating C.B.'s disabilities. *See also Enright v. Springfield Sch. Dist.*, No. 4-cv-1653, 2007 WL 4570970 (E.D. Pa. Dec. 27, 2007) (upholding jury verdict under Section 504 and the ADA against school district that failed to prevent sexual harassment of a disabled student on a school bus). Accordingly, Plaintiffs have

adequately pled that C.B. was denied the benefits of an appropriate educational plan because of his disability in support of their Section 504 claim.

### 2.  Deliberate Indifference

Defendants also argue that Plaintiffs failed to allege that the school district exhibited "deliberate indifference" to the underlying act of discrimination.  *Id.*  They maintain that Plaintiffs assert that at most, the teachers failed to provide e-mail updates to Plaintiffs regarding C.B.'s ongoing academic failures in violation of the Section 504 plan, a theory that if proven, would only amount to ordinary negligence.  To show deliberate indifference, the plaintiff must establish (1) ***knowledge*** that a federally protected right is substantially likely to be violated and (2) ***failure to act*** despite that knowledge.  *Id.*  Deliberate indifference "does not require a showing of personal ill will or animosity toward the disabled person," but "must be a deliberate choice, rather than negligence or bureaucratic action."  *Id.* (citation and internal quotation marks omitted).  Notably, plaintiffs "need not establish that there has been an intent to discriminate in order to prevail under § 504."  *Nathansan v. Med. Coll. of Pa.*, 926 F.2d 1368, 1384 (3d Cir. 1991).  They "may circumstantially allege that [the student] was discriminated against . . . by alleging facts that could be interpreted to show 'bad faith or gross misjudgment.'"  *McKellar v. Commonwealth of Pa. Dep't of Educ.*, No. 98-cv-4161, 1999 WL 124381, at *5 (E.D. Pa. Feb. 23, 1999).  Both Section 504 and ADA claims can be based on the discriminatory effect on disabled children of seemingly neutral practices, and neither require a finding of intentional discrimination.  *Helen L. v. DiDario*, 46 F.3d 325, 335 (3d Cir. 1995) ("'affirmative animus' . . . was not the focus of the ADA or section 504"); *see also McKellar v. Commonwealth of Pa. Dep't of Educ.*, No. 98-cv-4161, 1999 WL 124381, at *5 (inferential allegation that defendant school district did not comply with an individualized educational plan due to a minor plaintiff's disability was sufficient to sustain an ADA claim).

Here, Plaintiffs have satisfied this requirement.  Plaintiffs allege that the School District "was aware that C.B. experienced emotional difficulties, was seeing a therapist,

had recent suicidal ideations, possessed a recent family history of suicide, spoke in school about suicide, wrote in school of suicide, was very negatively affected by bad grades, needed support to be academically successful and emotionally stable, required parental assistance with any academic failures or concerns, was taking medication, and was in treatment for his emotional and functional disabilities." (Doc. 1, Compl. ¶ 65.) Notwithstanding the School District's awareness and having "personally observed C.B.'s ongoing academic failure," the School District failed to comply with its Section 504 Plan (and also failed to implement a more appropriate plan) to provide an appropriate educational program sufficient to accommodate C.B.'s disabilities, including but not limited to, for several years, failing to regularly e-mail Plaintiffs when teachers observed academic problems.

These allegations that the School District was aware of a disabled student's educational needs and health issues, but failed to develop and implement an appropriate plan in response, are sufficient to allege that the school district exhibited deliberate indifference.  For example, in *L.T. v. Mansfield Twp. Sch. Dist.*, No. 4-1381, 2009 WL 737108 (D.N.J. Mar. 17, 2009), the court found, after a five (5) day bench trial, that the plaintiffs had proved that a school district acted with deliberate indifference when it failed to provide an appropriate education to B.T. that accommodated his disability, because the district was ***aware*** of B.T.'s educational needs and health issues, but ***failed to timely develop and implement*** an appropriate educational plan.  *Id.* at *7; *see also Adam C. v. Scranton Sch. Dist.*, No. 7-cv-532, 2011 WL 4072756, at *5-*6 (M.D. Pa. Sept. 13, 2011) (denying summary judgment on Section 504 and ADA claims even under intentional discrimination standard where evidence showed that the defendants were aware of conditions in the school that led to the student's physical injury by another student and failed to take adequate steps to protect the student).

Similarly, Plaintiffs here allege that the School District was aware of C.B.'s educational needs and health issues, but failed to implement and follow an appropriate educational plan to address these needs and issues.  Indeed, it is this failure to comply

with the Section 504 plan that distinguishes this case from *Butler v. Mountain View School District*, No. 3:12-cv-02038, 2013 WL 4520839 (M.D. Pa. Aug. 26, 2013), which Defendants heavily rely upon in their motion to dismiss.  In *Butler*, a minor committed suicide as a result of bullying that the school district allegedly knew of and failed to prevent.  However, in *Butler*, the court found that the complaint failed to tie the bullying to any failure to follow an individualized educational plan for the minor, *i.e.*, that the school district's failures were connected to her disability:

> Ultimately, this matter is predicated upon a fact pattern that alleges the presence of bullying by another student/former friend of the decedent, ***not on a failure to implement an [individualized educational plan].***"

*Id.* at *6 (emphasis added).  Based on this, the court found that "no facts put forth in the complaint suggest that even if the school did fail to protect the decedent from bullying, their failure was predicated upon an intent to single out one particular disabled student." *Id.* at *8.

In contrast, Plaintiffs' case here ***is*** predicated on the School District's failure to implement C.B.'s educational plan.  C.B. required this plan because he was disabled, and the District's awareness of his disabilities in conjunction with its knowing failure to properly implement the plan is sufficient to allege deliberate indifference.  Accordingly, Defendants' motion to dismiss Plaintiffs' Section 504 claim in Count I will be denied.

## B.    ADA

Because Section 504 and ADA claims are subject to the same analysis and thus may be addressed at the same time, for the above reasons, Defendants' motion to dismiss Plaintiffs' ADA claim in Count II will also be denied.  *See Weidow v. Scranton Sch. Dist.*, 460 F. App'x 181, 184 (3d Cir. 2012) ("Because Congress has ***directed*** [that the ADA] be interpreted in a manner consistent with [the Rehabilitation Act], we will consider [Plaintiff's] claims under those statutes together.") (citation and internal quotation marks omitted) (first two alterations in original); *Chambers ex rel Chambers v. Sch. Dist. of Phila. Bd. of Educ.*, 587 F.3d 176, 189 (3d Cir. 2009) (noting that because the same standards govern both Rehabilitation Act and ADA claims, the court "may

address both claims in the same breath").

## C.      Plaintiffs' Section 1983 State-Created Danger Claim

Count III of Plaintiffs' Complaint asserts a civil rights claim pursuant to Section 1983, which provides a remedy for violations of rights created by the Constitution or federal law.  42 U.S.C. § 1983; *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979).  In order to state a claim under Section 1983, a plaintiff must show that the defendants, acting under color of state law, deprived him or her of a right secured by the Constitution or the laws of the United States.  *Paratt v. Taylor*, 451 U.S. 527, 535 (1981), *overruled on other grounds*, *Daniels v. Williams*, 474 U.S. 327 (1986).

Here, Plaintiffs allege that Defendants violated C.B.'s Fourteenth Amendment right to substantive due process by undertaking an affirmative duty to enforce a Section 504 Plan and failing to communicate with Plaintiffs about C.B.'s academic failures, thereby depriving his parents of their ability to intervene.  (Doc. 1, Compl. ¶ 81; Doc. 13, at 15-16.)  Plaintiffs allege that in doing so, Defendants created a false and dangerous sense of security regarding C.B. that ultimately resulted in his suicide.  Although the general rule is that the state has no affirmative obligation to protect its citizens from the violent acts of private individuals, courts have recognized two (2) exceptions to this rule.  *Morse v. Lower Merion Sch. District*, 132 F.3d 902, 907 (3d Cir. 1997) (citations omitted).  The first is known as the "special relationship" exception, which allows a plaintiff to recover "when the state enters into a special relationship with a particular citizen . . . [and] fails, under sufficiently culpable circumstances, to protect the health and safety of the citizen to whom it owes an affirmative duty."  *D.R. v. Middle Bucks Area Vocational Tech. Sch.*, 972 F.2d 1364, 1369 (3d Cir. 1992).  The second exception is the "state-created danger" theory of liability, which Plaintiffs invoke here.

The state-created danger theory has its origins in the United States Supreme Court's decision in *DeShaney v. Winnebago County Dep't of Social Servs.*, 489 U.S. 189 (1989).  The Third Circuit Court of Appeals adopted the "state-created danger" theory in *Kneipp v. Tedder*, 95 F.3d 1199 (3d Cir. 1996).  In *Kneipp*, the Third Circuit adopted a

four (4) part test, which was later modified in *Bright v. Westmoreland County*, 443 F.3d 276 (3d Cir. 2006). This test holds a state actor liable if: (1) the harm ultimately caused was foreseeable and fairly direct; (2) the state actor acted with a degree of culpability that shocks the conscience; (3) there existed some relationship between the state and the plaintiff such that the plaintiff was a foreseeable victim of the defendant's acts, or a member of a discrete class of persons subjected to the potential harm brought about by the state's actions, as opposed to a general member of the public in general; and (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all. *Bright*, 443 F.3d at 281. The *Bright* panel noted that the fourth element can be broken down into three (3) parts: (1) a state actor exercised his or her authority, (2) the state actor took an affirmative action, and (3) this act created a danger to the citizen or rendered the citizen more vulnerable to danger than if the state had not acted at all. *Bright*, 443 F.3d at 281 n.5, 281-82.

Here, Plaintiffs cannot satisfy the first element, that C.B.'s suicide was a foreseeable and "fairly direct" harm. Plaintiffs have alleged that C.B.'s suicide was a "fairly direct" harm because Defendants failed to create and implement a proper Section 504 Plan to afford C.B. a safe and educationally appropriate program, while affirmatively failing to inform his parents of C.B.'s failing grades. However, I am not bound to accept this conclusory statement, and as a matter of law, it cannot be true. *See Morse*, 132 F.3d at 908-09 (holding that the plaintiff's murder was not, as a matter of law, a "fairly direct" harm based on defendants leaving the back entrance to a school building unlocked). For example, in *Morse v. Lower Merion School District*, 132 F.3d 902 (3d Cir. 1997), the school district let various contractors leave the rear entrance door unlocked, even though this violated the school district's policy that all side and rear entrances had to be kept locked at all times. Consequently, a local resident with a history of mental illness was able to enter the building through the rear entrance and shoot a teacher. Notwithstanding allegations that the school district was aware of the unsecured rear

entrance, that nothing was done to correct the condition, and that the school district was aware of other security breaches in the past where unauthorized persons gained access to the building (which resulted in theft, vandalism, and in at least one instance, assault), the Third Circuit Court of Appeals found that Plaintiffs failed to allege facts sufficient to support liability.  *Id.* at 909.  The Third Circuit explained that although they must accept the allegation that the murderer gained access to the building through the rear entrance left unlocked by Defendants, this does not mean that the attack on the decedent occurred as a "direct result" of the defendants allowing the construction crews to prop open the door.  The causation was "too attenuated" to support liability, and therefore the Third Circuit affirmed dismissal of Plaintiffs' state-created danger claim.

Similarly, here, Plaintiffs' allegation that C.B. committed suicide as a result of Defendants' failure to communicate C.B.'s academic failures to Plaintiffs in accordance with C.B.'s Section 504 plan, is insufficient to support liability.  Although I must accept the allegation that Defendants failed to implement and follow an appropriate Section 504 plan, specifically in failing to communicate C.B.'s academic failures to Plaintiffs, this does not mean that C.B.'s suicide, though tragic, was a direct result of Defendants failing to communicate any academic concerns they had to Plaintiffs.  "The causation, if any, is too attenuated."  *Id.* at 909.  Plaintiffs can prove no set of facts that will provide the direct causal link between C.B.'s suicide and any of Defendants' failures to follow the Section 504 plan.

None of the cases cited by Plaintiffs or found through this Court's independent research stretch the concepts of foreseeability and causation this far.  For example, *Kneipp* itself involved a visibly intoxicated and incapacitated woman who was left alone on the road on a cold evening by the police.  There, the Third Circuit concluded that "a reasonable jury could find that the harm likely to befall [the decedent] if separated from [her husband] while in a highly intoxicated state in cold weather was indeed foreseeable" and could have led directly to her injuries.  95 F.3d at 1208.  In *Enright v. Springfield School District*, No. 4-cv-1653, 2007 WL 4570970 (E.D. Pa. Dec. 27, 2007), cited by

Plaintiffs, the defendant school district, against the plaintiffs' objection, unilaterally decided to transport a seven-year-old disabled female student with high school age boys, one of whom the school knew had a history of socially inappropriate and violent behavior. *Id.* at *8-*9.  The female student was sexually harassed on the bus by this high school boy, and she and her parents subsequently filed suit.  The court affirmed a jury verdict in favor of the plaintiffs on their state-created danger claim because the jury could have reasonably concluded that the harm sustained by the female student was a foreseeable and ***fairly direct*** harm. *Id.* at *9.  However, the connection between placing a seven-year-old female student on the same bus as high school boys, one of whom the school district clearly knew had a history of socially inappropriate and violent behavior, and the sexual harassment of that female student by that high school boy, is far less tenuous than the one here.  Consequently, Plaintiffs have failed to adequately plead the foreseeable and fairly direct injury element of the *Kneipp* test to support their state-created danger claim.

Given Plaintiffs' failure to allege a foreseeable and "fairly direct" harm, their claim can go no further and I need not address the remaining elements of the *Kneipp* test. However, I will note that Plaintiffs have also failed to allege the fourth element of their claim, that Defendants affirmatively used their authority in a way that created a danger to C.B. or that rendered C.B. more vulnerable to danger than had they not acted at all. Plaintiffs allege that Defendants "used their authority to create an opportunity that otherwise would not have existed for harm to occur because they took on an affirmative duty to enforce a Section 504 Service Plan and failed to communicate with C.B.'s parents about his failing grades."  (Doc. 1, ¶ 81.)  Although the implementation of the Section 504 Plan was an affirmative act by the school officials, this plan did not create a new danger to C.B. or render him more vulnerable to danger than had they not acted at all.

For example, in *Morrow v. Balaski*, 719 F.3d 160 (3d Cir. 2013), the Third Circuit rejected Plaintiffs' argument that the defendant school officials affirmatively created or

enhanced a danger to certain students by suspending a separate student and then allowing her to return to school when the suspension ended, because although the suspension was an affirmative act, the suspension did not create a new danger for the other students or render them more vulnerable to danger than had the state not acted at all. *Id.* at 178 (3d Cir. 2013). The Third Circuit even went as far to note that "[t]o the contrary, the suspension likely made the Morrows safer, albeit temporarily." *Id.* Similarly, here, although the School District's implementation of C.B.'s Section 504 plan was an affirmative act, it did not create a new danger to C.B. or render him more vulnerable to danger than had the district not acted at all.

Furthermore, Plaintiffs' allegation that Defendants failed to communicate with Plaintiffs regarding C.B.'s academic failures does not allege an affirmative act. *See Bright v. Westmoreland Cty.*, 443 F.3d 276, 282 (3d Cir. 2006) ("[W]e have never found a state-created danger claim to be meritorious without an allegation and subsequent showing that state authority was affirmatively exercised."); *see also Ye v. United States*, 484 F.3d 634, 640 (3d Cir. 2007) (holding that "a mere assurance" does not constitute an affirmative act to form the basis of a state-created danger claim). For example, in *Ye v. United States*, a patient brought a section 1983 state-created danger claim against a publicly employed doctor, who reassured the patient's family that "there was nothing to worry about" and that the patient was fine, when it turned out that the patient was not. *Id.* at 635-36. The patient testified that his family did not seek emergency medical assistance after the doctor's assurance that he was fine, but that had the doctor not made the assurance, they would have immediately taken him to the emergency room. *Id.* In reversing the district court's denial of the doctor's motion for summary judgment, the Third Circuit held "that a mere assurance cannot form the basis of a state-created danger claim," and explained that "assurances of well-being are not 'affirmative' acts within the meaning of the fourth element of a state-created danger claim." *Id.* at 640-42. Similarly, in *Bright v. Westmoreland County*, 443 F.3d 276 (3d Cir. 2006), a police officer "assured Bright approximately three weeks before Annette's death that Koschalk would

be arrested and in reliance upon these assurances, Bright failed to take defensive actions, such as leaving the area with his family, hence creating the opportunity for the damages ultimately sustained." *Id.* at 284.  The Third Circuit stated that a state-created danger claim could not be predicated on those facts because, *inter alia*, "under these circumstances, no 'affirmative duty to protect arises . . . from the State's . . . expressions of intent to help.'" *Id.* (citing *DeShaney*, 489 U.S. at 200).  The Third Circuit explained that the police officer's assurance that someone would be arrested, an action then not taken, could not constitute an affirmative action.  *Id.*  Similarly, here, Defendants' assurance that they would e-mail Plaintiffs regarding C.B.'s academic failures, an action they ultimately did not take, does not constitute an affirmative action for purposes of a state-created danger claim.

Yet another reason why the fourth element of Plaintiffs' state-created danger claim is not satisfied is that Plaintiffs fail to allege how Defendants' actions in any way prevented Plaintiffs from acting on their own behalf to intervene or assist C.B. with his academic failures.  For example, in *Bright v. Westmoreland County*, 443 F.3d 276 (3d Cir. 2006), the Third Circuit stated that a state-created danger claim could not be predicated on the facts presented because even assuming the account of causation was accurate, "Bright does not, and cannot, claim that the state in any way restricted his freedom to act on his family's own behalf."  *Id.* (citing *DeShaney*, 489 U.S. at 200). Similarly, in *Wyke v. Polk County School Board*, 129 F.3d 560 (11th Cir. 1997), the Eleventh Circuit also held that a school's assurance that it would assist a suicidal student did not deprive the parents from intervening to help, and therefore was insufficient to establish liability.  Specifically, Shawn Wyke had attempted suicide on school property but was ultimately prevented from doing so by a fellow student who related the incident to his mother.  *Id.* at 564.  The fellow student's mother called the school and was assured by the Dean of Students that "he would take care of it."  *Id.*  The Dean did no more than read various Bible passages to Wyke, who committed suicide shortly thereafter.  *Id.*  The fellow student's mother testified that had she not been falsely

assured that the problem would be dealt with by the Dean, she would have called Wyke's mother directly. *Id.* at 570. The Court stated that the Dean "did not, either by verbal or physical act, restrain [the concerned mother] from picking up her telephone," and therefore the Dean's assurance could not support a state-created danger claim. *Id.* Likewise, here, Plaintiffs cannot claim that the state in any way restricted their freedom to take their own actions to assist C.B. with his academic failures.

Because Plaintiffs have failed to satisfy both the first and fourth elements of their state-created danger claim, Defendants' motion to dismiss this claim will be granted.

**D.      Loss of Consortium**

Although Count IV of Plaintiffs' Complaint raises a loss of consortium claim**,** Plaintiffs withdrew this claim after Defendants pointed out that Pennsylvania, similar to federal law, does not recognize a cause of action for the loss of consortium of a child. *See Quinn v. City of Pittsburgh*, 243 Pa. 521, 524-25 (1914) (holding that a parent may not recover for the loss of a child's consortium because such a cause of action is confined to where a husband sues for injuries to his wife); *see also Robinson v. Hatzell Propeller, Inc.*, 276 F. Supp. 2d 412, 415 (E.D. Pa. 2003) (dismissing claim for parental loss of consortium on grounds that the Pennsylvania Supreme Court most likely would not allow that cause of action). Accordingly, this claim will be dismissed with prejudice.

**E.      Survival and Wrongful Death**

Counts V and VI of Plaintiffs' Complaint raise survival and wrongful death claims. Defendants seek dismissal on the grounds that (1) Plaintiffs fail to state a valid theory in tort under which a claim for survival and wrongful death may proceed, and (2) all Defendants are immune from suit under the Pennsylvania Political Subdivision Torts Claim Act ("PSTCA"). Under the PSTCA, local agencies such as school districts are given "broad tort immunity." *Sanford v. Stiles*, 456 F.3d 298, 315 (3d Cir. 2006). The Act provides that "no local agency shall be liable for any damages on account of any injury to a person or property caused by any act of the local agency or an employee thereof or any other person." 42 Pa.C.S. § 8541.

Plaintiffs concede that Defendants are correct with respect to the PSTCA and any claims based upon negligence or those involving the School District, and have therefore withdrawn their claims pursuant to Counts V and VI against the School District and all Individual Defendants in their official capacities only.  Accordingly, these claims will be dismissed with prejudice.

However, Plaintiffs assert that Defendants are incorrect with respect to Plaintiffs' survival and wrongful death claims directed toward the Individual Defendants in their individual capacities.  Specifically, Plaintiffs argue that despite that (1) concerns were raised relating to C.B.'s suicidal ideations due to his poor grades and (2) a revised Section 504 Service Agreement was sent to the family that Defendants were required to follow, including the familiar provision requiring Defendants to communicate concerns of C.B.'s academic performance to Plaintiffs, a full four (4) weeks passed without any substantive information about C.B. being sent from the Individual Defendants to Plaintiffs.  Plaintiffs assert that these claims against the Individual Defendants arguably involve intentional conduct and conduct potentially beyond the scope of their employment, as they were plainly aware of C.B.'s suicidal ideations and their responsibility to follow the Section 504 plan.   Accordingly, Plaintiffs invoke the "willful misconduct" exception to the PSTCA, 42 Pa.C.S. § 8550, which is a "question to be determined by the trier of fact" and therefore more appropriate to determine at the summary judgment state. *Acker v. Spangler*, 500 A.2d 206, 207 (Pa. Cmwlth. 1985).

Municipal employees, including school district employees, are generally immune from liability to the same extent as their employing agency, so long as the act committed was within the scope of the employee's employment.  42 Pa.C.S. § 8545.  The "willful misconduct" exception to the PSTCA provides that employees are not immune from liability under section 8545 where their conduct amounts to "willful misconduct":

> In any action against a local agency or employee thereof for damages on account of an injury caused by the act of the employee in which it is judicially determined that the act of the employee caused the injury and that such act constituted a crime, actual fraud, actual malice or willful misconduct, the provisions of section [] 8545 . . . shall not apply.

42 Pa.C.S. § 8550.  This "willful misconduct" exception is a demanding standard that the Pennsylvania Supreme Court has defined as "conduct whereby the actor desired to bring about the result that followed or at least was aware that it was substantially certain to follow, so that such desire can be implied."  *Renk v. City of Pittsburgh*, 537 Pa. 68, 641, 641 A.2d 289 (1994) (citations omitted); *see also Sanford v. Stiles*, 456 F.3d 298, 315 (3d Cir. 206) (finding that this "willful misconduct" exception did not apply and therefore the defendant was entitled to immunity under the PSTCA); *Brown v. Muhlenberg Twp.*, 269 F.3d 205, 214 (3d Cir. 2001) ("Willful conduct in this context [Section 8550 of Pennsylvania's PSTCA] has the same meaning as the term intentional tort.") (citations and internal quotation marks omitted).

Here, Plaintiffs have made no allegation that the Individual Defendants "desired to bring about" C.B.'s suicide or that they were aware that C.B.'s suicide was "***substantially certain*** to follow, so that such desire can be implied."  *Renk*, 537 Pa. at 641.  Plaintiffs' reliance on *Bornstad v. Honey Brook Twp.*, No. 3-3822, 2004 WL 1171244 (E.D. Pa. May 26, 2004) is misguided.  In *Bornstad*, the court denied the motion to dismiss Plaintiffs' survival and wrongful death claims against individual police officers because the court found that Plaintiffs alleged that the officers "willfully used unreasonable, unnecessary, and excessive force while arresting Decedent and were ***motivated to do so by race or other class-based discriminatory animus***."  *Id.* at *4 (citing paragraphs of the Amended Complaint) (emphasis added).  Here, there are no similar allegations in Plaintiffs' Complaint to support the "willful conduct" exception.  For example, there are no allegations that the Individual Defendants willfully refused to implement and follow an appropriate Section 504 Plan or that they were motivated by a discriminatory animus.  Therefore, Plaintiffs have failed to allege facts sufficient to invoke the "willful misconduct" exception and the Individual Defendants are entitled to immunity under the PSTCA.

Additionally, although Plaintiffs suggest in their opposition to Defendants' motion to dismiss that the Individual Defendants' actions "could potentially [be] beyond the

scope of their employment," there is no allegation in the Complaint to this effect.  (Doc. 13, at 17.)  Moreover, even if there were, it cannot be said that the Individual Defendant school officials' failure to comply with an educational plan for a disabled student was acting outside the scope of their employment.  Accordingly, the Individual Defendants are entitled to immunity under the PSTCA and Plaintiffs' survival and wrongful death claims will be dismissed.  However, Plaintiffs will be granted leave to amend their Complaint should they desire to plead the "willful conduct" exception.

### V. Conclusion

For the above stated reasons, Defendants' motion to dismiss Plaintiff's Section 504 and ADA claims in Counts I and II of the Complaint will be denied.  However, Plaintiffs' state-created danger claim in Count III of the Complaint, loss of consortium claim in Count IV of the Complaint, and survival and wrongful death claims as against Defendant School District in Counts V and VI of the Complaint will be dismissed with prejudice.  Plaintiffs' survival and wrongful death claims against the Individual Defendants will be dismissed without prejudice, and Plaintiffs shall have twenty-one (21) days from the date of entry of this Memorandum to file an Amended Complaint should they seek to plead the "willful conduct" exception to the PSTCA.

An appropriate order follows.


February 24, 2016                                    /s/ A. Richard Caputo
Date                                                        A. Richard Caputo
                                                               United States District Judge